UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT C. HARGRAVE, II,

        Plaintiff,

        v.                                    **DECISION AND ORDER**
                                                          18-CV-309S

ANDREW M. SAUL,

        Defendant.
_____

1.      Plaintiff Robert Hargrave brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.      Plaintiff protectively filed his application for benefits under Title II of the Act with the Social Security Administration on December 16, 2014. (R.[1] at 49.) Plaintiff alleged disability beginning on September 21, 2014, due to "depression, bipolar, schizophrenic, suicidal behavior," and "wrist has been cut—now has trouble with feeling." (Id.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Rosanne Dummer held a hearing on March 8, 2017, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 28-48.) Vocational Expert Jane Beougher also appeared and testified by telephone. At the time of the hearing, Plaintiff was 62 years old, with an eleventh-grade education, and prior work experience as an auto-body painter (R. at 58.)

---

[1] Citations to the underlying administrative record are designated as "R."

3. The ALJ considered the case de novo and, on March 16, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 12-23.) On January 12, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on March 5, 2018, challenging the Commissioner's final decision. [2]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 14, 19.) Plaintiff filed a response on September 20, 2019, (Docket No. 22), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's March 16, 2017, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

> has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date of September 21, 2014. (R. at 14.) At step two, the ALJ found that Plaintiff has the severe impairments of: history of polysubstance abuse, in reported remission; depressive disorder, in remission; rule out bipolar; hypertension; and restrictive lung disease. Id. At step three, the ALJ found that Plaintiff

does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Id.)

11. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of medium work, in that he could "lift/carry about fifty pounds occasionally, and twenty-five pounds frequently; sit six of eight hours, and stand/walk six of eight hours. (R. at 16.) He should "avoid concentrated exposure to pulmonary irritants." (Id.) He could "understand, remember, and carry out instructions for routine, repetitive unskilled work. He could tolerate brief and superficial contact with others." (Id.) He could "sustain attention and concentration for two-hour segments in an eight-hour day," and could "adapt to changes in the work setting for routine, repetitive type unskilled work." (Id.)

12. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (R. at 21.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 22.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged disability onset date of September 21, 2014, and the date of the decision. (R. at 23.)

13. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because (1) the ALJ failed to properly account for Plaintiff's left-hand and respiratory limitations in her RFC determination, and (2) the ALJ impermissibly substituted her lay judgment for medical opinion, after giving only partial weight to the opinion of Dr. Frank Ferraro.

14. Plaintiff badly injured his left wrist pursuant to a suicide attempt on September 21, 2014. (R. at 208.) Dr. Federico Doldan performed exploration, debridement and reconstruction. (R. at 205-207.) After the surgery, Plaintiff was able to move all his fingers back and forth, including his thumb. (R. at 206.) On follow-up on October 28, 2014, Dr. Doldan noted that Plaintiff was "healed." (R. at 219.)

15. After his suicide attempt, Plaintiff had regular psychiatric follow-up, during which steady improvement was noted. (See, e.g., R. at 236, 237, 264, 265, 269-77.) He also regularly saw Dr. Frank Ferraro, his primary care physician. Most of the visit notes are silent as to hand and wrist issues, although Dr. Ferraro did note "parasthesia" of the left hand on September 14, 2014, December 11, 2014, and July 21, 2015.[3] (R. at 221, 223, 254.) At the other eight visits for which Plaintiff submitted notes, Dr. Ferraro did not observe this symptom. (R. at 220, 222, 244, 247, 251, 253, 255, 256.) There is no evidence that Dr. Ferraro ordered follow-up testing on Plaintiff's left arm, nor did he medicate or otherwise treat any left-hand impairments.

16. Dr. Ferraro noted that Plaintiff's lungs were "clear" at most of his visits. He noted no shortness of breath, except on May 31, 2016, when it was "fair. A spirometry test was done on May 31, 2016. (R. at 252.) The form does not specify who performed the test or whether a physician interpreted it. The result states that Plaintiff's FEV1 was 25% of the predicted value, and the interpretation was "very severe obstruction." (Id.) Below this is a caution: "maneuvers not reproducible, interpret with care." (Id.)

---

[3] "Paresthesia refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. The sensation, which happens without warning, is usually painless and described as tingling or numbness, skin crawling, or itching." https://www.ninds.nih.gov/Disorders/All-Disorders/Paresthesia-Information-Page. Last accessed February 24, 2020 at 4:05 PM.

17. Dr. Ferraro filled out an undated form for Plaintiff for state disability determination. (R. at 259.) He stated that Plaintiff's diagnosis was "bipolar disorder," and that Plaintiff would "never" return to work. (Id.) Dr. Ferraro also filled out an undated medical opinion form. (R. at 240-243.) In the first section, Dr. Ferraro opined—by checking boxes—that Plaintiff could lift/carry less than 10 pounds on a frequent and occasional basis, could stand/walk for a maximum of two hours per day, and could sit for a maximum of four hours per day. (R. at 240.) Although the form instructs the doctor to identify medical findings that support the opinion, Dr. Ferraro does not provide any.

18. On the second page, Dr. Ferraro declined to answer questions regarding Plaintiff's postural restrictions, any handling or fingering restrictions, and environmental restrictions. (R. at 242.) Instead, Dr. Ferraro hand-wrote, "Note: patient's problems are psychiatric and related to heart disease, mainly." (R. at 241.) On the last page, instead of checking boxes, Dr. Ferraro wrote," these questions do not confront the real problems. This person has bipolar disorder and coronary artery disease." (R. at 243.)

19. Plaintiff argues that the ALJ failed to consider his left-hand and respiratory impairments in formulating his RFC determination. Plaintiff argues that Dr. Ferraro's opinion, bolstered by Plaintiff's testimony, and by Dr. Ferraro's notes of "parasthenia" in the left hand, shows that Plaintiff could only lift 10 pounds, and that the poor spirometry result shows that Plaintiff had a severe respiratory impairment. Defendant argues that substantial evidence supports the ALJ's RFC determination.

20. A plaintiff has the burden of proving that he or she is disabled, and of furnishing evidence of his or her disability. See 20 C.F.R. § 404.1512(a); 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are

7

... disabled."); Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012) (it is Plaintiff's burden to establish that she is disabled); Poupore v. Astrue, 566 F.3d 303, 305-06 (2d Cir. 2009) (the burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ).

21. The ALJ has the responsibility to determine a claimant's RFC, based on all the relevant medical and other evidence in the record. See id. §§ 404.1527(d)(2), 404.1545(a), 404.1546(c); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate responsibility to determine a claimant's residual functional capacity rests solely with the ALJ); Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8-9 (2d Cir. 2017) (unpublished) (summary order) (formal medical opinion as to plaintiff's functionality was not required where the record contained sufficient evidence from which the ALJ could assess the residual functional capacity). The law provides that an ALJ is permitted to assess RFC when the record contains enough evidence from which an RFC can be determined. See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order).

22. It is within the ALJ's discretion to resolve genuine conflicts in the evidence. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). An ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources, because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).

23. A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings, and is not inconsistent with other substantial evidence. See Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999). However, when the opinion of a treating physician is inconsistent with the record or internally inconsistent, an ALJ is not

8

required to give it controlling weight. See, e.g., Rosier v Colvin, 586 F. App'x 756, 758 (2d Cir. 2014) (the ALJ properly assigned less than controlling weight to a treating source opinion because it was inconsistent with other medical opinion evidence, plaintiff's daily activities, evaluation of consultative examiner, and treatment notes from other doctors); Camille v. Colvin, 652 F. App'x 25, 27 (2d Cir. 2016) (the ALJ properly afforded less than controlling weight to a treating source opinion because it was inconsistent with the doctor's own treatment notes and the opinion of a consultative examiner); Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) (ALJ can discount statements of a treating physician that conflict with his treatment notes).

24. If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ must consider "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Estrella v. Berryhill, 925 F.3d 90, 95–96 (2d Cir. 2019). The ALJ must explicitly discuss these factors, unless a "searching review" of the record allows a Court to determine that the ALJ considered them. Id.

25. Here, the ALJ gave Dr. Ferraro's opinion "partial weight" is based on the record. Except for three mentions of left-hand paresthesia out of eleven office visits and Plaintiff's own testimony of pain, there is no evidence of Plaintiff seeking or receiving treatment for his left hand. The ALJ determined that Dr. Ferraro's opinion was not supported by the rest of the evidence, noting that Plaintiff's wrist had healed well without complications and that Plaintiff did not seek treatment for his wrist. (R. at 19.) Although Plaintiff testified to hand problems at his hearing, the ALJ noted that Plaintiff's activities

9

of daily living reflect a "rather able individual," able to live alone, do chores, shop for his mother, and prepare simple meals. (R. at 20.)

26. Because of these inconsistencies, the ALJ was justified in not giving Dr. Ferraro's opinion controlling weight. She then was required to determine the weight to give his opinion. Upon review, it is clear that the ALJ's opinion addressed the requisite factors. She noted that Dr. Ferraro regularly treated plaintiff. (R. at 17.) She noted that Dr. Ferraro's opinion on lifting restrictions was not supported by the record, including by his own statements in that opinion. (R. at 20.) The ALJ also mentioned that Dr. Ferraro was Plaintiff's primary care doctor (i.e., not a specialist). (R. at 17.) There was thus no error in giving his opinion less weight, and in not giving Plaintiff left-hand restrictions.

27. Plaintiff also argues that the ALJ failed to properly account for his respiratory problems in her RFC. As with the left-hand limitations, this Court finds that the ALJ did not err. The record simply does not support an RFC with more respiratory restrictions. The ALJ noted that Plaintiff had a respiratory impairment, but that "the record does not appear to indicate significant treatment," and that plaintiff did not require breathing medications. (R. at 19.) Dr. Ferraro's notes regularly state that Plaintiff's lungs are "clear." A single spirometry report, with no physician interpretation attached, shows "unreproducible results." (R. at 252.) Additionally, as the ALJ noted, this test does not include a post-bronchodilator result for comparison. (R. at 14.) The ALJ's decision not to include respiratory restrictions, beyond limiting Plaintiff's exposure to pulmonary irritants, is thus supported by substantial evidence.

28. Plaintiff also argues that the ALJ should have recontacted Dr. Ferraro to clarify his opinion, due in part to his illegible writing, pursuant to her general duty to

10

develop the record. (Docket No. 14-1 at pp. 21-24.) An ALJ should seek additional information from a treating physician in cases when the record is unclear. Selian v. Astrue, 08 F.3d 409, 420.). Otherwise, the ALJ is to formulate an RFC based on all the relevant medical and other evidence in the record. Matta, 508 F. App'x at 55-56. A lack of treatment for a condition is evidence that an ALJ can consider. Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989) (lack of evidence that claimant sought medical attention may not preclude a finding of disability, but it does "seriously undermine" a disability claim); Gagnon v. Commissioner, 2016 WL 482068 at *6, 2016 U.S. Dist. LEXIS 14063 at *16 (N.D.N.Y. 2016) (subjective complaints of anxiety and social phobia are "undercut" by claimant's sporadic medical treatment for those impairments); Talbot v. Colvin, 2016 WL 320156 at *2-3, 2016 U.S. Dist. LEXIS 8520 at *7 (N.D.N.Y. 2016) (ALJ appropriately rejected physician's opinion that plaintiff was severely limited by depression, where plaintiff never sought mental health counseling).

29. Here, the record does not contain evidence of treatment or follow-up for hand or respiratory conditions. Although Dr. Ferraro's writing is difficult to make out, it is clear from his office notes that Plaintiff frequently had "no" parasthenia of the left hand, "no" shortness of breath, and that his lungs were largely "clear." There are no other records of treatment for these issues, and that very lack of treatment is part of the evidence the ALJ considered. Here, the record is clear that Plaintiff was not treated for hand or respiratory problems, and the ALJ was therefore not obliged to recontact Dr. Ferraro.

30. Plaintiff also argues, separately, that the ALJ failed to give proper weight to Dr. Ferraro's opinion, and substituted her lay judgement for his medical opinion. (Docket

11

No. 14-1 at p. 17.) Defendant argues that the ALJ properly weighed Dr. Ferraro's opinion. (Docket No. 19-1 at pp. 21-23.) As discussed above, this Court finds that the ALJ properly assessed Dr. Ferraro's opinion and appropriately gave it less than controlling weight. This Court therefore finds no error.

31. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No.14) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No.19) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   March 1, 2020
         Buffalo, New York

                                             s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                             United States District Judge